IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:08-cr-121-WHA |
| | ) | [wo] |
| JAMES R. RUSSELL | ) | |

# REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on a *Motion and Memorandum to Suppress All Evidence Derived from the Interception of Telephone Communication* filed by Defendant James Russell ("Russell") and the Government's *Response to Defendant's Motion to Suppress All Evidence Derived from the Interception of Telephone Communications*. *See* Doc. 279, "Motion to Suppress"; Doc. 302, "Response." Russell challenges the necessity of the wiretap in this case and seeks suppression of the resulting evidence. An evidentiary hearing was conducted on October 3, 2008. After the evidentiary hearing and due consideration of briefs, arguments, and applicable law, the Magistrate Judge concludes the wire tap passes Constitutional muster and recommends that the District Court **DENY** the motion to suppress.

## I. FACTUAL BACKGROUND AND MOTION TO SUPPRESS

The Grand Jury for the Middle District of Alabama indicted Russell and fifteen others for conspiracy to possess with intent to distribute powder and crack cocaine. The indictment and subsequent arrests stemmed from a Drug Enforcement Agency ("DEA") investigation

which resulted in the issuance of Title III wiretap orders for telephone number 334-538-4008 subscribed by Marcus Jenkins.

On May 29, 2008, the federal grand jury returned an indictment against five defendants, but not Russell. *See* Doc. 1, Indictment. On June 25, 2008, the federal grand jury returned a superseding indictment naming sixteen defendants including Russell. *See* Doc. 8, Superseding Indictment. The superseding indictment charged the defendants with conspiracy to possess with intent to distribute five (5) kilograms or more of powder and crack cocaine in violation of 23 U.S.C. § 846. As of the date of this report and recommendation, nine (9) defendants have entered guilty pleas to the conspiracy charge.

On September 25, 2008, Russell filed his motion to suppress along with a motion for leave to file out of time since the motion was well beyond the deadline established by the Court. *See* Doc. 279; *see* Doc. 280, Motion for Leave. The Court granted the motion to file out of time. The Motion to Suppress seeks to suppress all evidence derived from the wiretaps. *See* Doc. 279 at p. 3-5. Specifically, Russell contends the government failed to present sufficient facts to satisfy the "necessity" requirement of 18 U.S.C. § 2518(1)(c).

The United States filed its response on October 1, 2008 wherein it asserts that Russell failed to carry his burden to allege specific illegality and that he lacks standing to challenge the evidence obtained through the wiretap. *See* Doc. 302 at p. 2-4. The government further asserts that it satisfied the "necessity" requirement. *Id*. at p. 4-8.

## II. WIRETAP APPLICATION AND ORDER

As part of its investigation, the DEA applied for a wiretap of the cellular telephone of Marcus Jenkins, a suspected member of a cocaine distribution ring. With the application, the government submitted the affidavit of DEA Special Agent John Bret Hamilton ("Agent Hamilton"). *See* Exhibit 1-2 of Hearing, Application and Affidavit.[1]

In the affidavit, Agent Hamilton detailed the investigation from January 2008 to March 14, 2008. *See* Exhibit 2. The government had used two cooperating sources (CS1 and CS2), both of whom had proven reliable and whose information had been verified. Agent Hamilton detailed the information obtained from CS1 and CS2 including consensual recordings of telephone conversations and controlled buys. Agent Hamilton also explained that CS1 and CS2 could not identify all members of the drug trafficking group nor did they know the inner workings of the organization.

Agent Hamilton's affidavit further details the investigative techniques used and those they chose not to use during their investigation. Physical surveillance was used throughout the investigation, but became increasingly unhelpful because of counter surveillance techniques used by the defendants and the limited information surveillance could reveal. Further, prolonged physical surveillance was likely to alert the targets and compromise the investigation.

---

[1] These wiretap orders as well as the applications and affidavits supporting them were provided to defense counsel through discovery and were made part of the Court's record during the suppression hearing.

Agent Hamilton affirmed they used subpoenaed telephone records as well as a pen register and trap and trace device on Marcus Jenkins' phone. He noted that agents learned through these records that the target phone was used to make and receive calls from the phones of several alleged co-conspirators. The pen register records could not and did not identify either the person who actually made and received the calls nor do they provide the content of the conversations. As such, they could not help the agents achieve all the goals of the investigation.

Agent Hamilton also set forth the techniques which had been rejected. First, he stated the use of a pole camera had been considered and rejected because of the physical surroundings. The limited number of utility poles meant a pole camera would be easily found and likely compromise the investigation. Next, Agent Hamilton explained that the use of the federal grand jury would alert the target subjects to the investigations likely causing them to flee to avoid prosecution.

Agent Hamilton said the use of undercover officers would not likely result in useful information and would put the officers at great risk. The members of the alleged conspiracy all had long ties to each other and the community, therefore it was unlikely they would trust an "outsider." Agent Hamilton also opined search warrants would not have been appropriate because they had not yet identified all the individuals involved in the alleged conspiracy and thus did not know all the locations to search. A premature search would alert the target subjects and compromise the investigation. Likewise, Agent Hamilton believed a trash

search would likely be ineffective because the target subjects were using counter surveillance techniques and a trash search would likely compromise the investigation. Finally, Agent Hamilton noted financial analysis would not be effective because the investigating agents lacked sufficient information regarding financiers and financial relationships.

For all the reasons described above, Agent Hamilton advised United States District Judge Truman Hobbs that "normal investigative techniques have been tried and have failed, or reasonably appear unlikely to succeed fully if tried." *See* Exhibit 2 at ¶ 52. On March 14, 2008, Judge Hobbs authorized a thirty (30) day wiretap as well as the interception of additional telephone numbers. *See* Exhibit 3 from Hearing.

## III. DISCUSSION AND ANALYSIS

The authority to authorize electronic surveillance is found in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. Title III sets forth numerous requirements the government must meet to warrant authorization of a wiretap. *See* 18 U.S.C. § 2518(1). It further details the findings the district court must make and the requirements for the authorization order. *See* 18 U.S.C. § 2518(3)-(4). Title III also contains its own exclusionary rule wherein an "aggrieved person" may challenge the surveillance that occurred. *See* 18 U.S.C. § 2518(10).

### A. Standing

Standing for the purposes of challenging a wiretap is evaluated using the standing principles for Fourth Amendment claims. *Alderman v. United States*, 394 U.S. 165, 176 n.

9, 89 S.Ct. 961, 968 n. 9, 22 L.Ed.2d 176 (1969). "[O]nly an aggrieved person . . . may move to suppress a communication that was unlawfully intercepted." *United States v. Faulkner*, 439 F.3d 1221, 1223 (10th Cir. 2006). An "aggrieved person" is defined by the Act as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). To show he is an aggrieved party the claimant must show that he was a party to an intercepted communication, that the government's efforts were directed at him, or that the intercepted communications took place on his premises. *United States v. Apple,* 915 F.2d 899, 905 (4th Cir. 1990); *see also Faulkner*, 439 F.3d at 1223 (citing *Apple*); *United States v. Flores*, 2007 WL 2904109, *2 (N.D. Ga. 2007) (unpublished) (citing *Faulkner* and listing same requirements). Additionally, standing is not conferred on co-conspirators or co-defendants who are not parties to or targets of the intercepted communications, merely because they are implicated by the evidence obtained during the surveillance. *United States v. Fredericks*, 586 F.2d 470, 480 (5th Cir. 1978).

In his motion, Russell challenges the entirety of the fruits of the wiretap and seeks to suppress <u>all</u> evidence derived from the interception of telephone communication. *See generally* Doc. 279. During the hearing, Russell conceded he lacks standing to challenge all the phone calls captured under the wiretap, but does have standing to challenge the five phone conversations involving Russell which underlie Counts 41 through 45 in the Superseding Indictment. For the purposes of this analysis, the Court assumes Russell has

standing as to those five phone calls with Marcus Jenkins.[2]

**B. Necessity**

Russell challenges the wiretaps as unnecessary under the statute because normal investigative techniques - including the use of the pen register, subpoenaed records, and confidential sources - then being employed had been successful and should have been continued to be used. *See* Doc. 279 at p. 3. Russell posits the wiretaps were unnecessary.

An application for a wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This necessity requirement is "designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986) (citing *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974) and *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974)); *accord United States v. Carranza*, 921 F.2d 1557. However, the "affidavit need not . . . show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *Van Horn*, 789 at 1496 (citing *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984)).

---

[2] The Court does not address the merits of the Government's argument that Russell lacks standing because co-defendant Marcus Jenkins pled guilty and thus Russell has no expectation of privacy.

In the case at hand, the Government notes Russell fails to specifically address the alleged deficiency in the affidavit to support his claim, but instead generally alleges the basis for the Title III wiretap was insufficient. *See* Doc. 279 at p. 3. A court's wiretap order issued pursuant to Title III enjoys a presumption of validity. *United States v. Weber*, 808 F.2d 1422, 1423 (11th Cir. 1987); *United States v. Angula-Hurtado*, 165 F.Supp.2d 1363, 1367 (N.D. Ga. 2001). Thus, Russell bears the burden of overcoming this presumption of validity. *See United States v. De La Fuente*, 548 F.2d 528, 534 (5th Cir. 1977). Russell's vague and unspecific allegation that the wiretap was unnecessary is insufficient to carry his burden.

Further, to determine whether the Government satisfied the necessity requirement, the Court looks to the application and affidavits for the wiretap. The affidavit submitted in support of the wiretap is more than sufficient to satisfy Title III's necessity requirement. The affidavit details the steps law enforcement agents took and/or considered during their investigation of the drug conspiracy. Agent Hamilton described the techniques utilized including two confidential sources, consensual monitoring of telephone conversations, recorded telephone conversations, toll records, pen registers and trap and trace devices, mobile tracking devices, and physical surveillance. Despite using these techniques, law enforcement was unable to identify the full scope and membership of the drug trafficking organization. Agent Hamilton also described how other traditional investigative techniques - i.e. use of a pole camera, federal grand jury subpoenas, undercover officers, interviews,

search warrants, trash searches, financial analysis, and further use of the techniques already used - were not reasonably likely to succeed. Thus, contrary to Russell's assertion, the government has made sufficient showing that it was not successful in infiltrating the drug trafficking organization. In fact, counsel stated at the hearing that if not for the wiretap, her client probably would not have been discovered. The Court agrees, which demonstrates the necessity for the wiretap.

**C. Good Faith**

In any event, the *Leon* good faith exception to the Exclusionary Rule applies in this case. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* good faith exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Robinson*, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citing *United States v. Martin,* 297 F.3d 1308, 1313 (11th Cir. 2002)). The good faith exception also applies to wiretap applications and orders. *See United States v. Malekzadeh*, 855 F.2d 14982, 1497 (11th Cir. 1988). There are only four situations where the good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be

seized-that the executing officers cannot reasonably presume it to be valid.

*Martin*, 397 F.3d at 1313 (citing *Leon*, 468 U.S. at 923, 104 S.Ct. 3405). There is no indication nor any allegation that these four situations occurred in this case.

Further, the purpose of the exclusionary rule is to act as "a deterrent to willful conduct that violates individual rights." *Malekzadeh*, 855 F.2d at 1497. Here, the law enforcement officers did exactly what the law requires. An application and affidavit for a wiretap was submitted to a federal district judge who then made a probable cause determination. The reliance on the wiretap order was appropriate and accordingly, the good faith exception precludes suppression of the evidence.

## IV. CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant Russell's *Motion and Memorandum to Suppress All Evidence Derived from the Interception of Telephone Communication* (Doc. 279) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **October 17, 2008**.[3] Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District

[3] Shelton was given leave to file his late suppression motion. *See* Doc. 293. Because of the lateness of the motion and the compressed time period before trial, the objection period has been shortened from the standard thirteen days.

Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 8th day of October, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE